UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21969-CIV-HOEVELER

DENISE CATASUS,

    Plaintiff,

v.

BELL SOUTH SHORT TERM DISABILITY PLAN, and
BELL SOUTH LONG TERM DISABILITY PLAN,

    Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case was tried before the undersigned without a jury on July 20, 2009. Having reviewed pertinent portions of the file, having considered the administrative record pursuant to the parties' stipulation, and having heard arguments of the parties, the Court now makes the following findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

## INTRODUCTION

This case was filed, pursuant to ERISA 29 U.S.C. § 1001 et seq., seeking to recover short and long term disability income benefits. Plaintiff Catasus fell down a flight of stairs at her office in April 2005, and did not return to work for several months because of her injuries. She filed an application for short term disability benefits (for the period April 2005 through January 2006) and was denied. She returned to part time employment from January until April 2006, when she filed a second application for short term disability

benefits and stopped working. Defendants' claim administrator denied the second claim (which covered the period going forward from April 2006). Plaintiff argues that the denial of her claims (and the rejection of her appeals of those decisions) was arbitrary and capricious. Defendants, employee welfare benefit plans, argue that Plaintiff failed to establish that she had a "disability" pursuant to the Plan's definition.

## FINDINGS OF FACT

1. At all pertinent times for resolution of the short term disability benefits issues presented herein, Plaintiff's employer contracted with a third party to administer both Bell South's Short Term Disability Plan and Long Term Disability Plan, and delegated exclusive discretionary authority to that administrator to interpret the terms of the Plans. Broadspire Services, Inc., was the administrator from March 1, 2004, until Aetna Life Insurance Company purchased Broadspire's disability management operations. Aetna subsequently was replaced by Sedgwick Claim Management Services, Inc., when Sedgwick contracted with Bell South Corporation to be the third party administrator as of March 1, 2007. Declaration of Helen Peavler (April 24, 2008), Docket Entry No. 21.

2. In 2005, Plaintiff was employed by Bell South Telecommunications, Inc., as a Sales Associate; Plaintiff had worked for the company for more than twenty years (she originally was hired by the company in 1978, AR 332). The duties of a Sales Associate include handling telephone contacts with customers while interacting with the company's computer system, e.g., entering data, typing, etc. According to the job description, in some cases the contact with customers is face-to-face. AR 246.

3. The Short Term Disability Plan in effect until January 1, 2006, defines "disability" as a medical condition which "makes a Participant unable to perform any type of work as a result of a physical or mental illness or an accidental injury." "Any type of work" is defined to include the Participant's regular job with or without accommodations ... or temporary modified duties." As amended, effective January 1, 2006, the Short Term Disability Plan defines "disability" as a medical condition **supported by objective medical evidence**, which makes a Participant unable to perform any type of work as a result of a physical or mental illness or an accidental injury.[1]

4. On April 2, 2005, Plaintiff suffered a work-related injury when she fell down several stairs at her office resulting in lacerations to her scalp. Plaintiff experienced neck and lower back pain as well as numbness and tingling in her right arm and leg, and was treated in the emergency department at Kendall Regional Medical Center, where her scalp laceration was sutured. AR 284, 580.

5. Two days after the accident, Plaintiff was examined by Dr. Hector Delgado, Plaintiff's primary care physician, and was diagnosed with a concussion, and referred to a workers' compensation physician. AR270.

---

[1] Ms. Peavler, Benefits Director for the Defendants, claims that the addition of the words "supported by objective medical evidence" to the definition of disability was not a substantive change but merely clarified "long-standing administrative practices and interpretations of the Plan." Peavler, ¶4

3

6. On April 5 and April 11, 2005, Plaintiff was evaluated by Dr. Richard Spirer, who diagnosed Plaintiff as having back sprain, and mild discomfort through the range of motion of her back. Dr. Spirer ordered physical therapy for two weeks, and recommended that Plaintiff be on "light duty" work status with restrictions relating to bending, lifting, sitting no more than four hours daily, etc. AR 271, 273. ?276.

7. On April 19, 2005, Dr. Delgado evaluated Plaintiff; his report indicates that Plaintiff was having severe spasms and that he recommended that she receive physical therapy and not return to work at that time (Plaintiff had not returned to work since the accident). AR 278. Plaintiff continues to be treated by Dr. Delgado for pain and other symptoms throughout the next two years, e.g., 2005: on May 23 (AR 300), July 11 (AR 309), Sept. 6 (AR 397), Oct. 10 (AR 408), Oct. 31 (AR 414); 2006: on Jan. 5 (AR 333 - the date on the form mistakenly indicates Jan. 5, 2005), May 24 (AR 489), June 28 (AR 583), Aug 10 (AR 608), Oct. 31 (AR 687); 2007: on April 25 (AR 751).

8. On April 25, 2005, Plaintiff was evaluated by Dr. Hubert Aronson, who had treated Plaintiff in August 2002 for a problem with her cervical spine. Dr. Aronson performed a neurosurgical examination and noted that Plaintiff was "unable to return to work because of severe headaches." He noted that manipulation of the cervical spine reproduced pain in the neck, and he recommended an MRI of the head and examination by a medical neurologist for treatment of the headaches. He also recommended epidural steroid injections for Plaintiff's persistent pain radiating down her right arm. AR 284 - 285.

4

9. On May 19, 2005, Dr. Brad Herskowitz, a neurologist, recommended that Plaintiff not return to work, even at a sedentary level. He indicated on a Workers' Compensation report that Plaintiff had a "[w]ell defined, work-related medical condition associated with specific physiologic dysfunctions(s); little or no discordance between physical findings and the medical complaint." AR290. Dr. Herskowitz evaluated Plaintiff again for neck pain on Aug. 30 (AR 106 - 111), Nov. 11 (AR 125), and on Dec. 16, 2005 (AR 136, 138).

10. On May 20, 2005, Dr. Todd Alea (Board certified in pain medicine) examined Plaintiff and reported that she had a decreased range of motion and some decreased sensation on her right arm. He found "[c]ervicalgia with radicular symptoms on the right, and decreased reflexes ... with secondary myofascial pain causing greater occipital neuralgia." Dr. Alea noted that Plaintiff had failed conservative treatment thus far. AR 297-298. He treated her for pain in her right shoulder again on June 24, 2005. AR 305.

11. While Plaintiff remained out of work and was being treated by the doctors noted above, she pursued a claim for short term disability benefits from her employer. Her claim for benefits, claim number 1490770, was denied on April 22, 2005. AR 279. Plaintiff appealed the denial and requested review of the determination. As the Defendants' administrator, Broadspire conducted the review.

12. At Broadspire's request, Dr. Kenneth Fischer (a neurologist) performed an

Independent Medical Evaluation (IME) on Plaintiff on July 18, 2005. Dr. Fischer noted that Plaintiff was still actively symptomatic from her injury, with "possible right cervical radiculopathic findings with an abnormal MRI scan demonstrating discogenic disease at that level." He reported that Plaintiff had headaches despite taking Topamax, had neck pain radiating to her right arm despite prescriptions of Zanaflex, Soma, Ultracet, Mobic, and Zanax, and had been anxious and depressed. Dr. Fischer concluded that he would "expect consideration of return to work in approximately two months [with restrictions]." AR 314 - 316.

13. As part of the appeal, a Peer Review (i.e., a review of medical records which did not involve a direct examination of the patient/Plaintiff) was performed for the Plan by Dr. Vaughn Cohan on September 1, 2005. AR 317-320. Although Dr. Cohan noted that Plaintiff had "multiple cervical and lumbar musculoskeletal soft tissue injuries" from the accident, he concluded that those injuries "would have been expected to resolve with appropriate symptomatic medical treatment in 6 to 8 weeks time."

14. A second Peer Review was performed by Dr. Cohan on September 19, 2005, and concluded that Dr. Fischer had not stated a basis for recommendation that Plaintiff not return to work at that time. AR 321-323.

15. Based on these Peer Reviews and a review of X-ray and MRI records and reports from Drs. Delgado, Spirer, Aronson, Herskowitz, and Fischer, Broadspire denied Plaintiff's appeal (at the first level) on September 29, 2005. AR 325 - 329. The denial

was based on Plaintiff's providers not having submitted "objective medal data to support your being 'disabled' from any type of work." At some time prior to this appellate determination, short term disability benefits had been granted for a single date: July 8, 2005. AR 332.

16. On October 17, 2005, Plaintiff was referred by Dr. Delgado to begin treatment for depression. AR 409, 415. On November 7, 2005, medical professionals at the Family Counseling Center reported that Plaintiff was deeply sad and cried on a daily basis, but a report in January 2006 indicates that "significant progress" had been made and Plaintiff was motivated to return to work. AR 411. In October 2006, Plaintiff reportedly was in constant pain and the following month was diagnosed with Major Depression Disorder. AR 685. By February 2007, the reports indicate that Plaintiff had symptoms of anxiety, pain, and a lack of motivation. AR 686.

17. Dr. Herskowitz evaluated Plaintiff again on December 16, 2005, and found that Plaintiff was only approximately 60% improved, AR 138, and he reported on a Workers' Compensation form that Plaintiff's "functional limitations and restrictions ... are of such severity that he/she cannot perform work, even at a sedentary level, at this time ...." AR 136. He also noted that it was hopeful that Plaintiff could return to work "next month with restrictions." AR 140. At a visit on January 4, he found Plaintiff to be approximately 75% improved, and noted that her head was tender to touch, and she complained of dizziness. AR 149-151. He released her to return to work for a maximum of four hours daily. AR 160-161. Dr. Delgado also noted that Plaintiff's

symptoms were improving on January 5, 2006. AR 333.

18. On January 9, 2006, Plaintiff returned to work and worked until February 6, 2006, working four hour days with restrictions on lifting, etc. AR 332, 456, 604.

19. In a letter dated Jan. 11, 2006, Broadspire informed Plaintiff that her claim for disability benefits was denied because the information presented did not substantiate a reduction in work hours to four hours per day. Short term disability benefits were denied for a modified work schedule (four hour days for four weeks) as of Jan. 9, 2006. AR 497 - 499.

20. Plaintiff returned to work part time on Feb. 13, 2006, and had increased her work hours to six hours daily. AR 205, 332.

21. Plaintiff initiated a second level appeal of the denial of her disability benefits as to the periods April 10, 2005 - July 7, 2005, and July 9, 2005 - Jan. 8, 2006. AR 453.

22. Broadspire again administered the appeal. According to neurologist Dr. Henry Spira's Peer Review on March 1, 2006, he concluded that there was no support for a finding of disability. AR 468-472. A Peer Review by Dr. Bunny Falk, a psychologist, also determines that there is no support for Plaintiff's disability claim, stating that "the documentation submitted does not substantiate a functional impairment from a psychological perspective that would prevent the claimant from working any occupation

for the time frames in question." AR 475 - 478.

23. Dr. Herskowitz evaluated Plaintiff on March 30, 2006, and noted that her symptoms were worsening. AR 205.

24. On April 12, 2006, Plaintiff stopped working, AR 749; she had been working less than eight hour days until that date, AR 332. The following day she was seen by Dr. Delgado, who noted her chronic pain and headaches. Dr. Delgado recommended that she not return to work. AR 213. He concluded that Plaintiff was disabled, and confirmed that conclusion when he saw Plaintiff on April 24, 2006.

25. A new claim for disability benefits was initiated after Plaintiff left work in April 2006. This claim for benefits, claim number 1726607, was for the period beginning April 13, 2006.

26. On April 18, 2006, Dr. Alea again examined Plaintiff and reported that she had pain with flexion of the cervical spine, and diminished reflexes of her right arm and leg. His report concludes that Plaintiff has reached her maximum amount of improvement and states that "[s]he is lucky not to be a paraplegic at this time secondary to her fall." AR 235 - 236.

27. On April 24, 2006, Dr. Delgado submitted Broadspire's form regarding a "non-specific condition" which indicated that Plaintiff had severe spasms and should not be

working. AR 661.

28. Based on the Peer Reviews of Dr. Spira and Dr. Falk, and a review of additional medical records, Broadspire denied Plaintiff's second level appeal of her original claim (for April 2005 through January 2006), as stated in a letter dated May 5, 2006. AR 480.

29. At the request of Broadspire, Plaintiff was seen by Dr. Stuart Joseph on June 2, 2006. Dr. Joseph (an internal medicine/primary care physician) performed an IME and concluded that if Plaintiff's psychological/psychiatric issues were addressed, she should be able to return to sedentary work. He noted that if Plaintiff's depression was treated, her physical pain should improve and she should be able to return to work in six to eight weeks. AR 603 - 607.

30. Dr. Delgado evaluated Plaintiff on June 28, AR 583, and again on August 10, 2006, AR 609. Dr. Delgado recommended no work and, after a visit on September 18, 2006, AR 266, he noted no improvement. At some time in June or July 2006, Dr. Delgado noted that Plaintiff had reached her maximum improvement, and that she cannot work any hours. AR 584.

31. As to Plaintiff's new claim, claim number 1726607, on May 1, 2006, Broadspire denied the request for short term benefits as to the period of April 13 to April 17, 2006, and from April 19, 2006, going forward, because the information submitted did not "substantiate a severity of illness or functional impairment." Broadspire did approve one

10

day of short term disability benefits: April 18, 2006. AR 569. Plaintiff appealed the denial of benefits.

32. As part of the appeal, a Peer Review was performed for Broadspire on June 16, 2006, by Dr. Wendy Weinstein, an internal medicine physician, who found no disability. AR 576. (The report was dictated on June 16, and signed on July 10, 2006.)

33. On August 23, 2006, Plaintiff was discharged from Bellsouth for absences, effective July 3, 2006. AR 003.

34. Based on the Peer Review by Dr. Weinstein and a review of other medical records, on October 13, 2006, Plaintiff's appeal (the first level) of her new claim was denied. AR 878. (The letter of denial is from Aetna.) Plaintiff requested further review of this claim.

35. Over several dates in early 2007, Dr. Robert P. Ludwig, a clinical psychologist, evaluated Plaintiff. He administered tests of her cognitive functioning which revealed that she was within a borderline range of verbal comprehension and working memory, and "within a severely impaired range of functioning." Dr. Ludwig opined that the "most likely etiology of her reduced cognitive profile is her closed head injury resulting from her slip and fall accident." AR 756 - 765.

36. On June 14, 2007, Insurance Appeals, Ltd., performed a review related to the denial of Plaintiff's most recent claim for benefits. Dr. Carol Walker, PhD (Board

certified in neuropsychology), conducted this review and determined that Plaintiff was not disabled. AR 782 - 786. On that same date, Dr. Richard A. Silver (Board certified in orthopedic surgery) reached the same conclusion in a report for Insurance Appeals, Ltd. AR 787 - 790.

37. The denial of Plaintiff's second level of appeal of her later claim (for the period beginning in April 2006) was stated in correspondence dated June 27, 2007. The denial was explained as follows: "the clinical data submitted regarding your conditions is not substantiated with objective findings that would preclude you from performing any type of work." AR 791 - 793.

## **CONCLUSIONS OF LAW**

The Court only will reverse the decision of the claims administrator as to entitlement to disability benefits if it was arbitrary and capricious. Jett v. Blue Cross & Blue Shield of Ala., 890 F. 2d 1137, 1139 (11th Cir. 1989); Gibbs v. BellSouth Telecommunications, Inc., 326 Fed. Appx. 533 (11th Cir. 2009). The parties agree that this plan provides discretion to the administrator, and that this Court's review is limited to the facts known to the administrator at the time the decision was made.

1. Defendants' administrator correctly determined that Plaintiff was entitled to short term disability benefits for two dates: July 8, 2005, and April 18, 2006.

2. The Defendants' administrator's decision to deny benefits as to all other requested

12

dates was based on rejection of the recommendations and reports of several medical professionals - all of whom had met with Plaintiff; the rejection of these reports was arbitrary as it placed an inappropriate burden on Plaintiff to see that her treating physicians (and those contracted by Defendants' administrator) produced reports with the specificity desired by the Defendants.

3. Defendants' administrators' erred in rejecting every treating physicians' recommendation that Plaintiff was unable to work.  For example, Dr. Cohan's peer review of Sept. 1, 2005, noted that medical reports submitted by Dr. Herskowitz were not indicative of a functional impairment which would have precluded work while undergoing further medical evaluation and treatment.  AR 393-396.  Dr. Cohan cites Dr. Herskowitz's report of May 19, 2005, which described muscle tenderness and pain in the right sub occipital area, and recommended that the Plaintiff remain out of work, and Dr. Herskowitz's report of July 15, 2005, which noted that headaches and neck pain radiating into the right arm were continuing.  "He stated that there was upper paraspinal muscle tenderness and pain to palpitation in the right scalaneous and bilateral pectoral muscles."  AR 395.  Despite this reference to Dr. Herskowitz's findings, Dr. Cohan wholly rejects Dr. Herskowitz's recommendations, stating that his reports "are not indicative of a functional impairment which would have precluded work."  The Court disagrees with Dr. Cohan's analysis, and finds that Dr. Herskowitz (and others) adequately documented that Plaintiff was unable to return to work for the period of April 10 through July 15, 2005, due to disabling pain and muscle spasms related to her injury at work 7in April 2005.

4. As another example of the arbitrariness of the decision to deny benefits, the Court finds that the peer review conducted by Dr. Cohan on Sept. 19, 2005, improperly concluded that there was "no evidence" provided in the IME report of Dr. Fischer. Dr. Cohan first notes that "Dr. Fisher's [sic] impression was that the claimant continued to be symptomatic of possible right cervical radiculopathy. ... He suggested that she would require further time out of work and that on return to work she would be restricted to lifting no more than 25 lb and would be restricted in terms of repetitive use of her upper extremities." Despite this information, Dr. Cohan then states that there was "no evidence" in the medical records to support a restriction as to the repetitive use of the upper extremities. AR 323.

5. Dr. Spira's peer review (March 1, 2006) also rejected Dr. Fischer's recommendation that Plaintiff could return to work in two months with restrictions, noting that "he did not include any rationale on his exam for this opinion." AR 468-472, 471. The Court finds that Dr. Spira erred in this assessment that no rationale had been provided by Dr. Fischer.

6. Dr. Falk's peer review of March 20, 2006, notes Dr. Fischer's diagnosis that Plaintiff was "anxious, frustrated and depressed" but remarks that "no examples of the claimant behavior to support that these symptoms would preclude work." AR 475-478, 477. Again, the Court finds that Dr. Falk improperly discounted Dr. Fischer's findings.

7. The Court finds that Dr. Fischer's recommendation that Plaintiff might be able to

return to work in two months (from the date of his examination on July 18, 2005) was compelling evidence - supported objectively - that Plaintiff met the Plan's definition of disability for at least the period July 18 to September 18, 2005, due to continuing pain, headaches, muscle spasms, and other symptoms related to her injury in April 2005.

8. Several months after the injury at work, Plaintiff's physical impairments apparently triggered disabling depression, as Dr. Joseph diagnosed. Again the administrators erred when they rejected the report of their own recommended physician, Dr. Joseph. In June 2006, Dr. Joseph specifically stated that he did not feel that Plaintiff was exaggerating her complaints, and noted that Plaintiff's physical and emotional state were related to her injury. Dr. Joseph opined that Plaintiff "should be able to perform sedentary work for most of the scheduled work-day once the issues noted above [significant pain, spasms in neck and lower back, depression] are addressed." He concluded that she should be able to return to work in six to eight weeks if she received proper treatment for her depression. AR 603 - 607.[2] Based on this IME, and other evidence, the Court finds that Plaintiff met the definition of disability for the period of September 18, 2005, through at least July 2006, for depression (mental illness) that rendered her unable to function at work.

---

[2] Plaintiff argues that administrative notes in the record suggest that Defendants pushed the claims administrator to schedule an IME immediately in order to support termination of Plaintiff's employment. For example, at AR 814, 816, and 825, notes reveal that the employer is requesting IME "for possible termination." The Court need not address this argument in light of the Court's conclusion that the Defendants' administrator erred in its decision to deny benefits to Plaintiff.

15

9. Peer review conducted by Dr. Wendy Weinstein on July 10, 2006, again notes that Dr. Delgado's provided documentation does not support a functional impairment but Dr. Delgado – Plaintiff's primary physician – had provided a number of clinical observations. Dr. Delgado's recent records were cited, and indicated that Plaintiff was having cervical spasm with decreased range of motion of the cervical spine. Although an IME performed on June 2, 2006, indicated that Plaintiff was depressed and needs to be treated "the physician references the claimant having emotional issues that need to be addressed prior to her returning to work," this recommendation was rejected because the physician did not document "significantly abnormal mental status examination findings or a cognitive impairment that would indicate the claimant is unable to work." AR 576-578. Dr. Weinstein accepted that the Plaintiff had neck and back tenderness and would be restricted from repetitive twisting and turning of the neck and low back, AR 577, but still rejected the recommendations of treating physicians and others who found that Plaintiff was unable to work. Dr. Weinstein's conclusions were arbitrary and do not support the administrator's decision to deny benefits.

10. On June 14, 2007, Carol Walker, PhD (a neuropsychologist) conducted a review for the appeal. She referenced Dr. Ludwig's note that Plaintiff had "significant damage to the left hemisphere" and that he noted naming difficulties during the evaluation but Dr. Walker disregards this because there was no documentation of "specific testing of her ability in terms of her fluency or naming." AR786. Again, the administrator placed improper emphasis on the extent of documentation by examining physicians rather than on the substance of their reports.

11. There is no evidence of Plaintiff's attempt to fraudulently claim disability benefits. Indeed, Plaintiff's attempt to return to work in early 2006, and the lack of any medical professional's report of malingering, suggests that Plaintiff has proceeded in good faith.

12. As the overwhelming majority of evidence from the treating physicians and those physicians performing IMEs of Plaintiff indicates the presence of objective medical evidence to support Plaintiff's claim for disability, the Court finds that the decision of Defendant's third-party claims administrator to deny short-term disability benefits to Plaintiff for the period of at least April 10 to July 7, 2005, and July 9, 2005, to January 8, 2006 was arbitrary and capricious. (Although Plaintiff had returned to work in January, this Court finds that the record supports a conclusion that she met the Plan's definition of disability beyond January 8 to at least July 2006.)

13. Similarly, the decision of Defendant's third-party claims administrator to deny short-term disability benefits to Plaintiff for the period April 13, 2006, and going forward (through at least July 2006, as noted above), was arbitrary and capricious because objective medical evidence exists to support the conclusions of those physicians who examined her and determined that she should not return to work for the periods noted above.

14. As to the question of long term disability benefits, Defendants have stated that if Plaintiff had been approved for short term disability benefits for 52 consecutive weeks,

then she would have been able to apply for long term disability benefits (which, if approved, would have commenced in April 2006). As the Court has determined that Plaintiff met the Plan's definition of disability for the period of April 10, 2005, through July 2006, and beyond, Plaintiff shall be entitled to apply for long term disability benefits. Although Plaintiff has requested that this Court make a determination as to the provision of long term disability benefits, I will refrain from doing so and instead remand this question to the Defendants and direct that the appropriate administrative process be implemented.

In summary, while it may be that Defendants find doctors to be "notoriously conclusive" (as argued by defense counsel) in preparing their reports of examinations as to their patients, this Court cannot agree with the Defendants' administrator's decision to penalize Plaintiff for what Defendants perceive as the physicians' failure to exhaustively document her physical and mental condition. To be clear, the Court finds sufficient objective medical evidence in the record to support a finding of disability. By rejecting the recommendation of every physician who noted that Plaintiff had reached maximum medical improvement and remained unable to return to work, including the recommendations and findings of those physicians performing IMEs, the Defendants' administrator's decision was arbitrary and capricious.

For the reasons stated above, it is

ORDERED AND ADJUDGED that partial judgment be entered against Defendant and in favor of Plaintiff as to the provision of short term disability benefits,

consistent with the above findings. This is a partial judgment at this time because the Court has not yet addressed the question of long term disability benefits. The Court retains jurisdiction in this case, in the event that a review of the Long Term Disability Plan administrator's decision is requested by Plaintiff.

DONE AND ORDERED in Chambers in Miami this 21st day of May 2010.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT COURT JUDGE

Copies furnished:
Andrew B. Sapiro
Manuel Gurdian